IN THE COURT OF APPEALS

8/26/97

OF THE

STATE OF MISSISSIPPI

NO. 96-CA-00561 COA

DARTHA J. SCHIELE AND CLYDE K. SCHIELE APPELLANTS

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. CLARENCE E. MORGAN, JR.

COURT FROM WHICH APPEALED: GRENADA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANTS: GENE HARLOW

ATTORNEYS FOR APPELLEES: SHANNON SCARBROUGH CLARK

WILLIAM DALEHITE

NATURE OF THE CASE: CIVIL-INSURANCE CONTRACT

TRIAL COURT DISPOSITION: SUMMARY JUDGMENT GRANTED TO APPELLEES

MOTION FOR REHEARING FILED: 9/22/97

CERTIORARI FILED: 12/15/97

MANDATE ISSUED: 4/1/98

BEFORE THOMAS, P.J., DIAZ, AND PAYNE, JJ.

DIAZ, J., FOR THE COURT:

On April 17, 1992, Mrs. Dartha Schiele and Dexter F. Havens were involved in a car accident which was undisputedly caused by Havens. Mr. and Mrs. Schiele filed suit on September 30, 1993 against Havens and United Services Automobile Association (USAA) in the Circuit Court of Grenada County, Mississippi. The Schieles filed an amended complaint against Havens and USAA on February 16, 1994, which alleged Havens was negligent and asserted a claim for contractual benefits under the policy of insurance issued to the Schieles by USAA. The Schieles also demanded punitive damages from USAA based on USAA's failure to pay the full contractual benefits available under the uninsured motorist protection provision of the policy issued to the Schieles by USAA. The policy limits of the uninsured motorist provision was $100,000 for each of the two automobiles listed on the policy. Because the policy did allow for stacking, the total amount of benefits available to the Schieles was $200,000.

A settlement was entered into between Havens and the Schieles for $25,000, the policy limit of Havens' insurance policy with State Farm Mutual Automobile Insurance Company. Subsequently, an order of dismissal was entered as to Havens on November 11, 1994.

USAA filed a motion for partial summary judgment on September 26, 1994, requesting that the court strike the Schieles' claim for punitive damages against USAA. The Schieles then filed their response to USAA's motion for partial summary judgment, and a counter motion for summary judgment requesting the court to adjudicate that:

(1) USAA was legally obligated to pay the Schieles a sum equal to all compensatory damages suffered by them;

(2) USAA was not entitled to offset payments made under the medical payments coverage;

(3) the Schieles were entitled to $175,000 as contractual compensatory damages for the injuries Mrs. Schiele sustained in the automobile accident; and

(4) USAA acted in bad faith and was liable the Schieles for extra-contractual damages, attorney's fees, and any and all punitive damages allowable by law.

A hearing was held on the motions on August 15, 1995, during which time the court directed both parties to submit memorandum briefs to the court, USAA within ten days and the Schieles within ten days from USAA's filing.

Both parties complied, and on October 18, 1995, after some other motions not relevant to this issue were ruled upon, the judge ruled on the motions for summary judgment. The trial judge granted USAA's motion for partial summary judgment holding that there existed no evidence to submit the issue of bad faith on the part of USAA to the jury. The court denied the Schieles' motion for summary judgment as to whether USAA had a right to offset payments made under the medical payments coverage. The trial judge held that the issue was prematurely presented to the court, and he denied the motion as well as their motion for summary judgment as to the amount of compensatory damages to which Mrs. Schiele was entitled.

A jury trial was held, and a verdict was rendered in favor of Mrs. Schiele in the amount of $200,000. The trial judge offset this amount by the $25,000 already recovered from Havens, and a final judgment was entered on May 1, 1996 for $175,000. On the same day, a hearing was held to determine whether USAA was bound to pay pre-judgment interest and post- judgment interest on the $175,000. The judge held that the Schieles were not entitled to pre-judgment interest but were entitled to post-judgment interest on the judgment from the date of the judgment until the date USAA remitted payment of the $175,000.

The Schieles appeal on the basis that the judge erred when he refused to allow the jury to consider punitive damages, when he ruled that USAA had a right to offset the amount paid to the Schieles as medical benefits against the uninsured motorist benefits coverage, and when he refused to allow prejudgment interest on the judgment awarded to the Schieles.

## ISSUES

A. Did the trial court err when it granted summary judgment on the issue of whether USAA was guilty of bad faith such that the jury should have been entitled to consider punitive damages?

The Schieles contend that it was bad faith on the part of USAA when it denied their claim without any legitimate or arguable reason. This Court must examine the Schieles' bad faith claim by the standards set for summary judgment. In considering motions for summary judgment, we must examine the motion de novo. *Harvey-Latham Real Estate v. Underwriters at Lloyd's, London,* 574 So. 2d 13, 16 (Miss. 1990). We must review the motion as if we were the trial court ruling on the motion originally. *Id.* The Court must carefully review all the evidence before it--admissions, answers to interrogatories, depositions, affidavits, etc.--in the light most favorable to the non-moving party. *Id.* If, after viewing all the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact, then summary judgment may be granted. Miss. R. Civ. P. 56.

The movant is strapped with the burden of demonstrating that no genuine issue of material fact exists while the non-movant is given the benefit of every reasonable doubt. By the same token, however, the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.

*Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990)(citations omitted). The court, in *Newell*, reiterated by saying that the non-movant cannot just sit back and rely merely on his pleadings but must rebut the motion by producing significant probative evidence such as affidavits or other such evidence to set forth specific facts proving there are indeed issues for trial. *Id.* at 1041-42.

Therefore, this Court must examine what evidence is before it to see if there is a question as to whether USAA acted in bad faith in its denial of payment to the Schieles. If there was a question as to bad faith on the part of USAA, then the question of punitive damages should have gone to the jury. However, the plaintiff, asking for punitive damages based on bad faith, has a very heavy burden under Mississippi law. *Harvey-Lathem Real Estate,* 574 So. 2d at 16.

It is considered bad faith on the part of an insurer to act with malice, gross negligence, or reckless disregard for the insured's rights. If the alleged bad faith is the insurer's denial of a claim, then the court requires the insurer to show an arguable reason for denial of the claim. *Standard Life Ins. v. Veal,* 354 So. 2d 239, 248 (Miss. 1977). However, the absence of an arguable reason does not necessarily mean that there was bad faith on the part of the insurer. *Blue Cross & Blue Shield v. Maas,* 516 So. 2d 495, 497 (Miss. 1987). The claim could have been denied due to a mistake or oversight on the part of the insurer.

In the case at bar, USAA had an arguable reason for withholding payment of the claim. USAA began investigating the matter when informed of the claim and determined that certain claims were based on a pre-existing condition. Therefore, USAA made a good-faith settlement offer which was refused by the Schieles. Because the Schieles felt that they deserved more money, the case went to trial. This trial was held to determine the issue of damages due to the Schieles from USAA, not whether or not the claim was covered by the insurance policy. Where there is a " legitimate pocketbook dispute, " punitive damages will not lie. *Evangelista v. Nationwide Ins. Co.,* 726 F. Supp. 1057, 1059 (S.D. Miss. 1988). The Mississippi Supreme Court and this Court do not grant an instruction for punitive damages lightly where there was no denial of coverage, but only a dispute as to the amount of liability. *Id.* There must be wanton, gross or intentional conduct and not merely a pocketbook dispute. *Id.*

Not only must the insured prove there was no arguable reason for denial of the claim by the insurer for a punitive damages claim to go to the jury, he must also prove that there was malice, gross negligence, or wanton disregard of the insured's rights. *Blue Cross and Blue Shield,* 516 So. 2d at 497. Because there was an arguable reason for denial of the full claim, we do not have to delve into the question of malice, gross negligence, or wanton disregard for the insured's rights. We, therefore, affirm the trial judge's grant of partial summary judgment in favor of USAA on the question of punitive damages.

B. Did the trial judge commit reversible error with respect to his ruling as to whether or not USAA was allowed to offset the uninsured motorist claim by the medical payments previously paid to the Schieles?

The Schieles filed a motion in pre-trial for summary judgment on this issue, and the trial judge

refused to rule on the motion because he felt that it was prematurely brought before the court. After the jury returned a verdict for the Schieles in the amount of $200,000, the Schieles made a post-trial motion to obtain a ruling that USAA could not offset the amount of medical payments already paid against the total amount of uninsured motorist benefits yet to be paid. The judge made a declaratory judgment stating that the amounts could not be offset, and further stated that he believed that USAA had not attempted to offset the amounts.

Although one of the issues on which the Schieles are appealing is that the judge allowed the setoff, we are unable to find any evidence in the record that it, in fact, happened. However, it is very clear from the record that the judge ruled that there could be no setoff of these two benefits. The trial judge stated in the record, "[Offset] had not been attempted and could not be attempted until such time as there was a judgment, and [USAA has] not attempted it now, so I rule they are not entitled to the offset. Let's get on to the next issue."

Mississippi case law is clear on this issue. There can be no offset of medical benefits against uninsured motorist benefits. *Harthcock v. State Farm Mutual Automobile Insurance Company,* 248 So. 2d 456, 461-62 (Miss. 1971). We, therefore agree with the trial judge's ruling and affirm on this issue.

C. Did the trial judge err when he ruled that the Schieles were not entitled to prejudgment interest?

The Schieles argue that they should be entitled to prejudgment interest either from sixty days following submission of their claim with supplemental documentation, or in the alternative, from the point in time when USAA admitted that they owed the Schieles a sum certain. Mississippi law states that the only time prejudgment interest may be awarded is when the denial of benefits was in bad faith on the part of the insurer, or when the claim is liquidated. *Aetna Casualty Insurance Company v. Doleac Electric Company,* 471 So. 2d 325, 331 (Miss. 1985).

Because this Court has already ruled that USAA did not act in bad faith, we must only examine whether or not the claim was liquidated. The Schieles contend that during settlement negotiations, USAA admitted owing the Schieles $91,439.57 in compensatory damages. This was brought out in a deposition, and in pre-trial motions the judge ruled that the evidence was not admissible because it dealt with settlement negotiations. The Schieles contend that this much of the damages has been admitted and is therefore liquidated. However, this Court does not agree.

The Mississippi Rules of Evidence holds that offers to compromise, conduct and statements made during settlement negotiations are all inadmissible at trial. M.R.E. 408. If this Court were to allow offers and admissions made by a defendant to the plaintiff during settlement negotiations, to be used against that defendant as an admission by a party opponent, then settlement negotiations would all but cease to exist. The Mississippi court system and public policy encourage negotiations and settlements in order to keep the system moving smoothly. We therefore, affirm the lower court's ruling on this third and final issue.

**THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**